UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| ERIC STEINMETZ, | Civil Action No.: \_\_\_\_\_ |
| Plaintiff, | |
| v. | |
| CHECK CITY PARTNERSHIP, LLC, | COMPLAINT |
| Defendant. | |

For this Complaint, the Plaintiff, ERIC STEINMETZ, by undersigned counsel, states as follows:

## JURISDICTION

1. This action arises out of Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") by negligently, knowingly, and/or willfully placing automated calls to Plaintiff's cellular phone without consent, thereby violating the TCPA.

2. This action also arises out of Defendant's violations of Nevada Revised Statutes Chapter 604A.010 *et seq.* ("NRS 604A"), and the harassment of Plaintiff by the Defendant and its agents in their illegal efforts to collect a high-interest loan as defined under this Chapter.

3. Plaintiff alleges as follows upon personal knowledge as to Plaintiff

and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

4. Defendants have through their conduct in collecting a loan governed by NRS 604A violated NRS 604A.415.

5. Defendant CHECK CITY PARTNERSHIP, LLC is a "licensee" as that term is defined by NRS 604A.

6. NRS 604A.415 incorporates the Fair Debt Collection Practices Act (FDCPA), as amended, 15 U.S.C. §§ 1692a to 1692j, which applies herein "even if the licensee is not otherwise subject to the provisions of the [FDCPA]."

7. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 and this Court has original jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740 (2012).

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c), because Plaintiff resides within the District of Nevada, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Defendant regularly conducts business in this District.

## PARTIES

9. The Plaintiff, ERIC STEINMETZ ("Plaintiff" or "Mr. Steinmetz"), is an adult individual residing in North Las Vegas, Nevada.

10. Plaintiff is, and at all times mentioned herein was, a "person" as

defined by 47 U.S.C. § 153(39).

11. Defendant CHECK CITY PARTNERSHIP, LLC ("Defendant" or "CHECK CITY"), is doing business in the State of Nevada.

12. Defendant is and at all times mentioned herein was, a corporation and is a "person," as defined by 47 U.S.C. § 153 (39).

13. CHECK CITY at all times acted by and through one or more of the Collectors.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

### A. The Debt

14. Plaintiff allegedly incurred financial obligations (the "Debt") to Check City.

15. The Debt was a "high-interest loan" as defined by NRS 604A.0703.

16. NRS 604A.415 provides that:

> If a customer defaults on a loan, the licensee may collect the debt owed to the licensee only in a professional, fair and lawful manner. When collecting such a debt, the licensee must act in accordance with and must not violate sections 803 to 812, inclusive, of the federal Fair Debt Collection Practices Act, as amended, 15 U.S.C. §§ 1692a to 1692j, inclusive, even if the licensee is not otherwise subject to the provisions of that Act.

17. As such, a violation of the Fair Debt Collection Practices Act (FDCPA) a though j is also a violation of NRS 604A.415.

## B. <u>CHECK CITY Engages in Harassment and Abusive Tactics</u>

## <u>FACTS</u>

18. Struggling to meet his financial obligations, in 2014 Mr. Steinmetz made a mistake he would soon regret when he applied for and received several high interest loans from the Defendant.

19. Over the course of several years, Mr. Steinmetz faithfully repaid his loans with CHECK CITY, which CHECK CITY would then renew and Mr. Steinmetz would continue to repay.

20. However, in April 2016 Mr. Steinmetz found himself struggling to repay all his household bills as they came due.

21. Mr. Steinmetz then consulted with and subsequently hired a bankruptcy attorney.

22. Thereafter, Mr. Steinmetz, now in contemplation of filing Chapter 13 Bankruptcy, ceased payments to his creditors, including CHECK CITY.

23. Accordingly, Mr. Steinmetz defaulted on the Debt.

24. On April 13, 2016, in a twenty minute phone call that began at 3:21 p.m., Plaintiff called the Defendant and spoke with a CHECK CITY representative (the "April 13, 2016 Call"). During this call the Plaintiff advised CHECK CITY to cease all further communications to him regarding the debt as well as any calls to his cell phone.

25. On April 14, at 5:56 pm Plaintiff sent a written cease and desist demand (via email) to the Defendant formally revoking CHECK CITY's "right" (to the extent it had a right) to communication with the Plaintiff about the Debt (the "C&D Request").

26. The C&D Request further advised CHECK CITY that the Plaintiff retained a lawyer and directed CHECK CITY that further communication regarding the Debt was to be sent to Plaintiff's lawyer.

27. CHECK CITY received the C&D Request.

28. Notwithstanding the foregoing, CHECK CITY persisted in debt collection communications directly with the Plaintiff on a near-daily basis.

29. Specifically, CHECK CITY continued placing automated text messages to Plaintiff's cell phone, sending letters to his address, and engaging in other communications despite his efforts to restrict CHECK CITY's communications.

30. In specific, the Plaintiff documented the following illegal communications from CHECK CITY:

   a. On April 16, 2016, at 9:23am Plaintiff received a text message from Defendant on his cell phone from 885-88 (a CHECK CITY identifier), which stated that the loan was due on April 15, 2016 and to contact Defendant at 702-216-1999.

   b. On April 20, 2016, at 9:17am Plaintiff received a text message from Defendant on his cell phone from 885-88 (a CHECK CITY identifier), which stated that the loan was due on April 15, 2016 and

to contact Defendant at 702-216-1999.

c. On April 23, 2016, at 9:24am Plaintiff received a text message from Defendant on his cell phone from 885-88, which stated that the loan was past due and to contact Defendant.

d. On April 23, 2016, at 9:24am Plaintiff received a second text message that day from Defendant on his cell phone from 885-88, which stated that Plaintiff's recent payment had been returned and to contact Defendant at 702-216-2100.

e. On April 23, 2016, at 10:23am Plaintiff received a phone call and subsequent twelve second voicemail on his cell phone from 702-216-2100. The voicemail was silent for the entire twelve seconds. The number Plaintiff received the call from had previously been provided to him by a CHECK CITY representative. ***This was the third time Plaintiff was contacted by Defendant that day.***

f. On April 28, 2016, Plaintiff received a letter from Defendant stating that Plaintiff's loan was in default.

g. On April 30, 2016, at 9:24am Plaintiff received a text message from Defendant on his cell phone from 885-88, which stated that Plaintiff's recent payment had been returned and to contact Defendant at 702-216-2100 or go to a CHECK CITY branch.

h. On May 7, 2016, at 9:24am Plaintiff received a text message from Defendant on his cell phone from 885-88, which stated that the loan was past due and to contact Defendant.

i. On May 10, 2016, Plaintiff received a letter from Defendant stating that Plaintiff's loan was in default.

j. On May 10, 2016, Plaintiff received a letter from Defendant stating that Plaintiff's loan ID No. N20-3839243 was in default.

31.   Plaintiff was contacted every few days (often multiple times in a single day) after the loan was in default and, after, the Defendant was placed on

notice (through – at least – the C&D Request) that he revoked permission to call his cell phone and instructed Defendant to contact his counsel.

32. Based on CHECK CITY's forgoing conduct, it appears a certainty that the Plaintiff will continue enduring illegal debt collection conduct and this lawsuit results.

## C. Plaintiff Suffered Actual Damages

33. The Plaintiff has suffered and continues to suffer actual damages as a result of CHECK CITY's unlawful conduct.

34. Further, Plaintiff alleges that Defendants actions at all times herein were "willful."

35. As a direct consequence of Defendant's harassing collection conduct, acts, practices and conduct, the Plaintiff suffered and continues to suffer from anger, anxiety, emotional distress, frustration, rage, headaches, an upset stomach, and has otherwise been totally annoyed by Defendant's intrusive and illegal collection efforts.

36. CHECK CITY's unlawful conduct also caused the Plaintiff to suffer from sleep deprivation and insomnia for which he now takes prescribed medicine to fall and stay asleep.

37. Plaintiff has also lost the use of personal and family time while enduring these frustrations.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

38.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

39.     The TCPA regulates, among other things, the use of automated telephone dialing systems.

40.     47 U.S.C. § 227(a)(1) defines an automatic telephone dialing system ("ATDS") as equipment having the capacity –

>   (A)     to store or produce telephone numbers to be called, using a random or sequential number generator; and
>
>   (B)     to dial such numbers.

41.     Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call or text message using an ATDS or an artificial or prerecorded voice to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

42.     According to findings by the Federal Communications Commission ("FCC"), such calls are prohibited because automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls or text messages. The FCC also recognized that wireless customers are charged for incoming calls and texts.[1]

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

43. On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded calls to a wireless number by a creditor, or on behalf of a creditor, are permitted only if the calls or texts messages are placed with the "prior express consent" of the called party.[2]

44. On July 10, 2015, the FCC issued FCC Order 15-72, wherein the FCC[3] stated that "[a] caller may not limit the manner in which revocation [of prior express consent to call] may occur" and that the "burden is on the caller to prove it obtained the necessary prior express consent". *Id.* at ¶ 30.

45. Further, consumers (like the Plaintiff) may revoke consent through any reasonable means. *Id.* at ¶ 47.

46. Nothing in the language of the TCPA or its legislative history supports the notion that Congress intended to override a consumer's common law right to revoke consent. *Id.* at ¶ 58.

47. Indeed, some consumers may find unwanted intrusions by phone more offensive than home mailings because they can cost them money and because, for many, their phone is with them at almost all times. *Id.* at ¶ 61.

---

[2] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C.R. 559, 23 FCC Rcd 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C.) (2008).

[3] See Declaratory Ruling and Order, Adopted June 18, 2015 and Released July 10, 2015 regarding *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135 (https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf).

48. Consumers have a right to revoke consent, using any reasonable method including orally or in writing. *Id.* at ¶ 64.

## ALLEGATIONS APPLICABLE TO ALL TCPA COUNTS

49. Defendant employs a type of technology called "Short Message Services." The term "Short Message Services" or "SMS" is a messaging system that allows cellular phone subscribers to use their cellular telephone to send and receive short text messages, usually limited to 160 characters.

50. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be instantly received by the called party virtually anywhere in the world.

51. SMS calls can cost cell phone users (like the Plaintiff) money, because cell phone users (like the Plaintiff) must frequently pay their respective wireless service providers either for each text message call received or incur an usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

52. Within the four years prior to filing the instant complaint, the Plaintiff received numerous text message calls from the Defendant.

53. Upon information and belief, Defendant employs an automatic telephone dialing system ("ATDS") which meets the definition set forth in 47 U.S.C. § 227(a)(1).

54. Defendant or its agent/s contacted Plaintiff on Plaintiff's cellular telephone number ending in "9603" via an ATDS as defined by 47 U.S.C. § 227(a)(1), as prohibited by 47 U.S.C. § 227(b)(1)(A) by sending numerous unwanted text message calls.

55. As discussed above, on the April 13, 2016 Call Plaintiff instructed Defendant or its agent(s) not to call the Plaintiff's cell phone ever again thereby revoking consent, if any ever existed, to be contacted by Defendant via an ATDS.

56. Plaintiff additionally sent a written request, via email, to the Defendant on April 14, 2016 revoking consent for Defendant to place calls to his cellular telephone.

57. Moreover, Defendant did not have prior express consent to place any text message calls to Plaintiff on Plaintiff's cellular telephone at any time after the April 13, 2016 Call.

58. However, Defendant placed text message calls to the Plaintiff's cellular telephone without consent using an ATDS in violation of the TCPA.

59. Defendant's ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

60. The telephone number that Defendant used to contact Plaintiff was and is assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

61. Defendant's text message calls to Plaintiff's cellular telephone were not for "emergency purposes."

62. Pursuant to the TCPA and the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that it had prior express consent to call Plaintiff's cellular phone with an ATDS.

## COUNT I

### Violations of the FDCPA
### (as incorporated through NRS 604A.415)

63. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

64. Any violation of 15 U.S.C. §§ 1692a through j constitutes a violation of NRS 604A.415.

65. The Defendants' conduct violated 15 U.S.C. § 1692c(a)(2) in that Defendant contacted the Plaintiff after it knew Plaintiff was represented by an attorney.

66. The Defendants' conduct violated 15 U.S.C. § 1692c(c) in that

Defendant engaged in communication with the Plaintiff after written notification that the Plaintiff refuses to pay the Debt, or that the Plaintiff requested the Defendant to cease communication with the Plaintiff.

67. The Defendants' conduct violated 15 U.S.C. § 1692d in that Defendants engaged in behavior the natural consequence of which was to harass, oppress, or abuse the Plaintiff in connection with the collection of a debt.

68. The Defendants' conduct violated 15 U.S.C. § 1692d(5) in that Defendant caused Plaintiff's phone to ring repeatedly or engaged the Plaintiff in repeated conversations in connection with the collection of a debt.

69. The Defendants' conduct violated 15 U.S.C. § 1692f in that Defendants used unfair and unconscionable means to collect a debt from the Plaintiff.

70. The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the FDCPA (and therefore also constitute violations of NRS 604A.415), including every one of the above-cited provisions.

71. The Plaintiff is entitled to damages as a result of Defendants' violations.

72. The Plaintiff has been required to retain the undersigned as counsel to protect the Plaintiff's legal rights to prosecute this cause of action, and is therefore entitled to an award or reasonable attorneys' fees plus costs incurred.

## COUNT II

### Negligent Violations of the
### Telephone Consumer Protection Act,
### (47 U.S.C. § 227, *et seq.*)

73. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

74. Defendant negligently placed multiple automated text message calls to cellular numbers belonging to Plaintiff without Plaintiff's prior express consent.

75. Each of the aforementioned calls by Defendant constitutes a negligent violation of the TCPA.

76. As a result of Defendant's negligent violations of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages for each text message call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

77. Additionally, Plaintiff is entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

## COUNT III

### Knowing and/or Willful Violations of the
### Telephone Consumer Protection Act,
### (47 U.S.C. § 227, *et seq.*)

78. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

79. Defendant knowingly and/or willfully placed multiple automated text

message calls to cellular numbers belonging to Plaintiff without Plaintiff's prior express consent.

80. Each of the aforementioned calls by Defendant constitutes a knowing and/or willful violation of the TCPA.

81. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff is entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

82. Additionally, Plaintiff is entitled to seek injunctive relief prohibiting such conduct by Defendant in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that judgment be entered against the Defendants awarding the Plaintiff:

1. for consequential damages pursuant to NRS 604A.930 against each and every Defendant for Plaintiff;

2. for statutory damages pursuant to NRS 604A.930 against each and every Defendant for Plaintiff;

3. for an award of actual damages pursuant to NRS 604A.930 against each and every Defendant for Plaintiff;

4. for an award of punitive damages pursuant to NRS 604A.930 against each and every Defendant for Plaintiff;

5. for an award of costs of litigation and reasonable attorney's fees pursuant to NRS 604A.930 against each and every Defendant for Plaintiff;

6. "void" the Debt, bar Defendant from collecting thereon, and compel the Defendant to turnover any principal, interest or other charges or fees collected on the Debt pursuant to NRS 604A.900(1).

7. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

8. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

9. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

10. any other legal or equitable relief that the court deems appropriate.

/./././

## TRIAL BY JURY DEMANDED ON ALL COUNTS

Dated: May 23, 2016

> Respectfully submitted,
> By: /s/ David H. Krieger, Esq.
> David H. Krieger, Esq.
> Nevada Bar No. 9086
> HAINES & KRIEGER, LLC
> 8985 S. Eastern Avenue, Suite 350
> Henderson, Nevada 89123
> Phone: (702) 880-5554
> FAX: (702) 385-5518
> Email: dkrieger@hainesandkrieger.com
>
> Attorney for Plaintiff
> *ERIC STEINMETZ*